#24844-a-JKM

**2009 SD 4**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

ROBERT STEICHEN,                              Petitioner and Appellant,

    v.

DOUGLAS WEBER, Warden of
the South Dakota State Penitentiary,          Respondent and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
AURORA COUNTY, SOUTH DAKOTA

* * * *

HONORABLE BRUCE V. ANDERSON
Judge

* * * *

STEVEN R. BINGER                              Attorney for petitioner
Sioux Falls, South Dakota                     and appellant.

LAWRENCE E. LONG
Attorney General

CRAIG M. EICHSTADT
Assistant Attorney General                    Attorneys for respondent
Pierre, South Dakota                          and appellee.

* * * *

CONSIDERED ON BRIEFS
NOVEMBER 3, 2008

OPINION FILED **01/21/09**

#24844

MEIERHENRY, Justice

[¶1.]     Robert Steichen appeals the denial of his petition for habeas corpus relief.  Specifically, Steichen argues that the admission of SDCL 19-12-5 (Rule 404(b)) evidence of other acts violated his due process rights; that he had ineffective assistance of counsel at trial; and that his sentences were grossly disproportionate. We affirm.

**FACTS AND PROCEDURAL BACKGROUND**

[¶2.]     Steichen was convicted in 1997 of three counts of First-Degree Rape, seven counts of Third-Degree Rape, and one count of Sexual Contact with a Child under the Age of sixteen.  The incidents allegedly occurred in Aurora and Jerauld Counties, South Dakota, between July 1996 and February 1997.  The counts involved sexual conduct towards H.F., Steichen's six-year old step-daughter and towards K.C., a babysitter.  At trial, the children testified to repeated molestations by Steichen.  On the three counts of First-Degree Rape, the circuit court imposed consecutive sentences of thirty years, seventy-five years, and life imprisonment without parole.  On the other charges, the trial court imposed consecutive sentences of eight years for one count of Third-Degree Rape, and fifteen years for each of the other seven charges, for a total of 113 years, to run concurrent with the First-Degree Rape sentences.

[¶3.]     Steichen's convictions were affirmed by a majority of this Court in *State v. Steichen*, 1998 SD 126, 588 NW2d 870.  Steichen's application for a writ of habeas corpus from the United States District Court for the District of South Dakota in 2000 was denied because he had not exhausted state court remedies.  In

2007, Steichen filed a writ of habeas corpus in state circuit court. The circuit court

denied Steichen's writ on January 30, 2008. Steichen appeals the following issues:

## ISSUES

1) Whether Steichen's right to due process was violated by the admission of other acts evidence.

2) Whether Steichen was denied his right to effective assistance of trial counsel because an alibi witness was not called to testify.

3) Whether Steichen's sentences were unconstitutionally cruel and unusual.

## STANDARD OF REVIEW

[¶4.]     We consider habeas corpus proceedings under a limited standard of

review. *Erickson v. Weber*, 2008 SD 30, ¶17, 748 NW2d 739, 744 (citations

omitted). Habeas corpus review does not substitute for direct review. *Id.*

> Habeas corpus can be used only to review (1) whether the court has jurisdiction of the crime and the person of the defendant; (2) whether the sentence was authorized by law; and (3) in certain cases whether an incarcerated defendant has been deprived of basic constitutional rights. Habeas corpus is not a remedy to correct irregular procedures, rather, habeas corpus reaches only jurisdictional error. For purposes of habeas corpus, constitutional violations in a criminal case deprive the trial court of jurisdiction. Further, we may not upset the habeas court's findings unless they are clearly erroneous.

*Id.* (citing *Bradley v. Weber*, 1999 SD 68, ¶12, 595 NW2d 615, 619 (quoting *Flute v.*

*Class*, 1997 SD 10, ¶8, 559 NW2d 554, 556)) (other citations omitted). The initial

burden is on the applicant to demonstrate by a preponderance of the evidence that

relief is required. *Id.* (citing *New v. Weber*, 1999 SD 125, ¶5, 600 NW2d 568, 572

(citing *Lien v. Class*, 1998 SD 7, ¶11, 574 NW2d at 607)).

## ANALYSIS

### 1. Whether Steichen's right to due process was violated by the admission of other acts evidence.

[¶5.] As part of its case-in-chief, the State presented the testimony of the two children who were named victims of the charged offenses. Additionally, the State offered testimony of four other children who claimed Steichen had sexually molested them. The State also presented limited testimony of incidents of Steichen's violence towards his wife and other family members. The testimony of the other children and the references to Steichen's violence were allowed under SDCL 19-12-5 (Rule 404(b)) as other acts evidence. SDCL 19-12-5 (Rule 404(b)) restricts the use of other acts evidence as follows:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

SDCL 19-12-5. The trial court determined that the other acts evidence was admissible to show motive, common scheme and plan, opportunity, lack of mistake or accident, and continuing course of criminal conduct. The trial court further determined that the other acts evidence was more probative than prejudicial.

[¶6.] On appeal, a majority of this Court found no error in admitting the other acts evidence under SDCL 19-12-5 (Rule 404(b)) "to show motive, common plan or scheme, opportunity and a continuing course of criminal conduct." *Steichen*, 1998 SD 126, ¶¶16-34, 588 NW2d at 874-78. This Court determined, however, that it was error for the trial court to admit the evidence to show lack of mistake or

accident. Even so, the error was determined harmless "because Steichen's case was not prejudiced by the circuit court's decision." *Id*. ¶26, 588 NW2d at 876 (citation omitted).

[¶7.]     Steichen now seeks habeas corpus relief, claiming that the admission of the other acts evidence deprived him of a fair trial and violated his due process rights under the Fifth and Fourteenth Amendments to the United States Constitution. *See* US Const amend V; US Const amend XIV. With such a challenge, Steichen has the burden of "establish[ing] an error which demonstrates a violation of due process. This burden is much greater than that required on direct appeal and is even greater than the showing of plain error on direct appeal." *See* Loop v. Class, 1996 SD 107, ¶23, 554 NW2d 189, 193 (citations omitted). On habeas review:

> The inquiry is not 'whether the circuit court erred in admitting the particular testimony,' but 'whether the admissions resulted in a trial so fundamentally unfair as to deny [Steichen] due process of law. In making this determination we must review the totality of the facts in the case and analyze the fairness of the particular trial under consideration.'

*Id.* (quoting Rainer v. Dep't of Corrections, 914 F2d 1067, 1072 (8thCir 1990) (citations omitted), *cert. denied,* 498 US 1099, 111 SCt 993, 112 LEd2d 1077 (1991). Our review of a constitutional question is de novo. Moeller v. Weber, 2004 SD 110, ¶42 n3, 689 NW2d 1, 15 n3 (citing State v. Dillon, 2001 SD 97, ¶12, 632 NW2d 37, 43).

[¶8.]     As the Eighth Circuit Court of Appeals noted in *Nebinger v. Ault,* "[r]ulings on the admission or exclusion of evidence in state trials rarely rise to the level of a federal constitutional violation." 208 F3d 695, 697 (8thCir 2000). "Only

'when an evidentiary ruling is so egregious that it results in a denial of fundamental fairness,' may it violate due process and warrant habeas relief." Harris v. Wolfenbarger, 2007 WL 2421545, 12 (ED Mich) (quoting Bugh v. Mitchell, 329 F3d 496, 512 (6thCir 2003)). Consequently for habeas relief, Steichen must show under the totality of the circumstances, error "'so "gross" . . . "conspicuously prejudicial" . . . or otherwise of such magnitude that it fatally infected the trial and failed to afford [Steichen] the fundamental fairness which is the essence of due process.'" *See Loop*, 1996 SD 107, ¶23, 554 NW2d at 193 (quoting *Rainer,* 914 F2d at 1072 (citations omitted), *cert. denied,* 498 US 1099, 111 SCt 993). The habeas applicant must show that "there is a reasonable probability that the error complained of affected the outcome of the trial- i.e., that absent the alleged impropriety, the verdict probably would have been different." Harris v. Bowersox, 184 F3d 744, 752 (8thCir 1999) (quoting Carter v. Armontrout, 929 F2d 1294, 1296 (8thCir 1991)); *see* Rodriquez v. Weber, 2000 SD 128, ¶1, 617 NW2d 132, 136 (concluding "that there is no reasonable probability that the outcome of the trial would have been different had the errors not occurred").

[¶9.] We already determined on appeal that most of the other acts evidence did not adversely prejudice Steichen. Steichen's renewed challenge to the other acts evidence also fails to warrant relief. A review of the entire trial record shows that the other acts evidence admitted in Steichen's trial was not of "such magnitude that it fatally infected the trial" or its outcome. *See Loop*, 1996 SD 107, ¶23, 554 NW2d at 193 (citations omitted). The State presented sufficient evidence to convict Steichen. Both victims testified that Steichen abused them sexually. K.C., the

sixteen-year-old babysitter, testified in detail regarding Steichen's repeated sexual abuse. H.F., Steichen's seven-year-old step-daughter was not as detailed in her testimony because of her age. Other witnesses, however, corroborated H.F.'s allegation of sexual abuse. The doctor who examined H.F. testified that H.F.'s injuries were consistent with a child who had been sexually abused. In addition, the social worker and psychotherapist who met with H.F. testified that H.F.'s behavior was consistent with a child who had been sexually abused. The evidence concerning Steichen's violence to family members was only referenced in the context that Steichen was the disciplinarian of the family. The family-violence testimony was brief and not detailed. Thus, under the totality of the circumstances the admission of the other acts evidence did not deprive Steichen of his due process right to a fair trial.

[¶10.]     Steichen also bases his due process claim on the trial court's failure to properly instruct the jury. Steichen claims that the jury should have been instructed to consider the other acts evidence only if the jury first found by a preponderance of the evidence that the acts had occurred. Steichen did not propose such an instruction or otherwise object to the instruction given by the trial court. At the time of Steichen's trial, we had not had an opportunity to specifically address the burden of proof of other acts evidence. Subsequently, in *State v. Wright,* we determined that "[b]efore a jury may consider facts relating to other acts as proof of an issue relevant to the present offense; the jury must conclude the defendant committed the other acts by a preponderance of the evidence." 1999 SD 50, ¶14, 593 NW2d 792, 799 (citing Huddleston v. United States, 485 US 681, 689, 108 SCt

1496, 1501, 99 LEd2d 771 (1988)).  Our pronouncement in *State v. Wright,*
conformed to *Huddleston v. United States.  Id.*

[¶11.]          In *Huddleston v. United States,* the United States Supreme Court
granted certiorari in order "to resolve a conflict among the Courts of Appeals as to
whether the trial court must make a preliminary finding before 'similar act' and
other Rule 404(b) evidence is submitted to the jury."  *Huddleston*, 485 US at 685,
108 SCt at 1499.  The Court concluded that Federal Rule 404(b) evidence "should be
admitted if there is sufficient evidence to support a finding by the jury that the
defendant committed the similar act."  *Id*.  "Evidence is admissible under Rule
404(b)," the Court said, "only if it is relevant. . . .  In the Rule 404(b) context, similar
act evidence is relevant only if the jury can reasonably conclude that the act
occurred and that the defendant was the actor."  *Id.* at 689, 108 SCt at 1501.
Whether the admission of the 404(b) evidence violated constitutional due process
was not addressed in either *Wright* or *Huddleston.*

[¶12.]        The United States Supreme Court did, however, address a similar due
process issue in *Estelle v. McGuire.*  502 US 62, 112 SCt 475, 116 LEd2d 385 (1991).
In *Estelle,* the defendant was convicted of second-degree murder in the death of his
6-month old daughter.  *Id*. at 64, 112 SCt at 478.  The child was brought to the
hospital after she turned blue and stopped breathing.  *Id*.  Unable to be revived, she
died shortly thereafter.  *Id*. at 65, 112 SCt at 478.  Her body showed severe bruising
on various parts of her body.  *Id*. at 64-65, 112 SCt at 478.  The defendant denied
harming the child and claimed that her injuries resulted from falling from a couch
or perhaps by intruders who entered the residence while he was out of the room.  *Id*.

at 65, 112 SCt at 478. Prosecutors introduced evidence that the child had prior injuries including broken ribs and rectal tears to prove "battered child syndrome." *Id.*

[¶13.]    The defendant, McGuire, sought habeas relief claiming that his due process rights were violated because the evidence should not have been admitted and because the jury instruction "allowed the jury to consider the prior injury evidence for more than simply proof of the battered child syndrome." *Id.* at 70, 112 SCt at 481. The *Estelle* Court found that admission of the prior injury evidence did not violate the defendant's federal constitutional rights because evidence of battered child syndrome was relevant to show intent. *Id.* at 69, 112 SCt at 480. Likewise, the Court found the jury instruction did not violate due process. *Id.* at 70, 112 SCt at 481.

[¶14.]    The Court applied the following due process standard of review for jury instructions:

> The only question for us is "'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." It is well established that the instruction "may not be judged in artificial isolation," but must be considered in the context of the instructions as a whole and the trial record. In addition, in reviewing an ambiguous instruction, . . . we inquire "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way" that violates the Constitution. And we also bear in mind our previous admonition that we "have defined the category of infractions that violate 'fundamental fairness' very narrowly." "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation."

*Id.* at 72-73, 112 SCt at 482 (internal citations omitted).[1] McGuire claimed that "despite the lack of any direct evidence linking him to those injuries, the instruction directed the jury to find that he had committed them." *Id.* at 73, 112 SCt at 483. The Court rejected this argument because the instruction included the words, "if the Defendant committed other offenses," which left it to the jury to decide. *Id.* The Court concluded from the record that "to the extent that the jury may have believed McGuire committed the prior acts and used that as a factor in its deliberation, we observe that there was sufficient evidence to sustain such a jury finding by a preponderance of the evidence." *Id.* at 73-74, 112 SCt at 483. McGuire also claimed that the instruction amounted to a propensity instruction allowing the jury to convict based on his prior actions. *Id.* at 74, 112 SCt at 483. The Court rejected his argument because of the limiting instruction that told the jury that the prior

---

1.     The challenged jury instruction in *Estelle*, in relevant part, was as follows:

> Evidence has been introduced for the purpose of showing that the Defendant committed acts similar to those constituting a crime other than that for which he is on trial. Such evidence, if believed, was not received, and may not be considered by you[,] to prove that he is a person of bad character or that he has a disposition to commit crimes. Such evidence was received and may be considered by you only for the limited purpose of determining if it tends to show three things:
> * * *
> 2.     To establish the battered child syndrome, and
> 3.     Also a clear connection between the other two offenses[s] and the one of which the Defendant is accused, so that it may be logically concluded that if the Defendant committed other offenses, he also committed the crime charged in this case.
>
> For the limited purpose for which you may consider such evidence, you must weigh it in the same manner as you do all other evidence in the case. You are not permitted to consider evidence for any other purpose.

Estelle v. McGuire, 502 US 62, 67 n1, 112 SCt 475, 479 n1 (1991).

injuries could not be considered "to prove that [McGuire] is a person of bad character or that he has a disposition to commit crimes." *Id.* at 75, 112 SCt at 483.

[¶15.]    In comparison, the instruction given in Steichen's trial was as follows:

> Evidence has been introduced that the defendant committed offenses or acts other than that which is now charged.
> Although evidence of this nature is allowed, it may be used only to show: motive, absence of mistake or accident, common plan or scheme, opportunity, and continuing course of criminal conduct. You may not consider it as tending to show in any other respect the defendant's guilt of the offense with which he is charged in this trial.
> You are not required to consider this evidence, and whether you do is a matter within your exclusive province.

Additionally, the trial court instructed that the jury was the sole determiner of the credibility of the witnesses and that guilt must be determined beyond a reasonable doubt. Unlike the jury instruction in *Estelle v. McGuire*, the instruction here told the jury that it could not use the other acts evidence to determine Steichen's guilt. The instruction, however, did not clearly indicate that the other acts could be considered for the limited purposes only *if* the jury logically believed the defendant committed them. Thus, the instructions left ambiguity as to whether the jury first had to find that the other acts had been committed by Steichen. Consequently, we need to review the instructions to determine "'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violate[d] the Constitution." *Id.* at 72, 112 SCt at 482 (quoting Boyde v. California, 494 US 370, 380, 110 SCt 1190, 1198, 108 LEd2d 316 (1990)).

[¶16.]    Admittedly, the challenged jury instruction did not specifically tell the jury to determine that Steichen committed the other acts before considering them

for the limited purposes enumerated. Nevertheless, because of other jury instructions, it was unlikely that the jury considered the other acts without first believing that Steichen had committed them. *See Id.* at 74, 112 SCt at 483.

[¶17.]     One of the other instructions in Steichen's case told the members of the jury that they were "the sole and exclusive judges of . . . the credibility of the witnesses." Steichen's other acts of sexual molestation came from witnesses who explicitly testified that Steichen had molested them. Members of the jury had to judge the credibility of those witnesses. If the jury believed their version of the facts, the jury would have concluded that Steichen had committed the other acts. Conversely, if the jury did not believe the witnesses, the jury would not have concluded that Steichen had molested the other children. The same can be said of the brief testimony concerning Steichen's violence toward his family. Additionally, another instruction directed that the jury was "not required to consider [the other acts] evidence, and whether [the jury did was] a matter within [its] exclusive province."

[¶18.]     When a jury instruction is challenged based on a violation of due process, we look at the challenged instruction "in the context of the instructions as a whole and the trial record." *Id.* at 72, 112 SCt at 482 (citing Cupp v. Naughten, 414 US 141, 147, 94 SCt 396, 400-01, 38 LEd 2d 368 (1973)). Having considered the instruction in the context of the other instructions and the trial record, we find there is not a "'reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." *Id.* (quoting *Boyde*, 494 US at 380, 110 SCt at 1198).

[¶19.] Additionally, the trial court utilized other sources to protect Steichen against unfair prejudice from the Rule 404(b) other acts evidence. The United States Supreme Court in *Huddleston* recognized the prejudicial risk of admitting Rule 404[b] evidence and discussed how the Federal Rules of Evidence provided protections against unfair prejudice. 485 US at 691, 108 SCt at 1502. "[P]rotection against such unfair prejudice," the Court said, "emanates . . . from four . . . sources." *Id.* Those sources are as follows:

> [F]irst, from the requirement of Rule 404(b) that the evidence be offered for a proper purpose; second, from the relevancy requirement of Rule 402-as enforced through Rule 104(b); third, from the assessment the [circuit] court must make under Rule 403 to determine whether the probative value of the similar acts evidence is substantially outweighed by its potential for unfair prejudice; and fourth, from Federal Rule of Evidence 105, which provides that the [circuit] court shall, upon request, instruct the jury that the similar acts evidence is to be considered only for the proper purpose for which it was admitted.

*Id.* at 691-92, 108 SCt at 1502 (internal citations omitted).

[¶20.] In Steichen's direct appeal, we analyzed these sources of protection against unfair prejudice and concluded that they had been applied and that Steichen could show no prejudice. *Steichen*, 1998 SD 126, ¶31, 588 NW2d at 877. After determining relevancy, the trial court determined that the probative value of the other acts evidence outweighed the prejudicial effect. The trial court admitted the evidence for a limited purpose and repeatedly cautioned the jury of its limited admissibility. The trial court further instructed the jurors that they were *not* required to consider the other acts evidence, and whether they did was "a matter within [their] exclusive province." The trial court advised the jury that the other acts evidence could not be considered "as tending to show in any other respect the

defendant's guilt of the offense with which he is charged in this trial." The jury was also instructed on the elements of the charged crimes and that Steichen was presumed innocent unless the jury "was satisfied from all the evidence beyond a reasonable doubt that [Steichen] was guilty."

[¶21.] We have recognized the need to specifically tell the jury to find the defendant committed the other acts by a preponderance of the evidence before considering the acts under SDCL 19-12-5 (Rule 404(b)). In this case, based on the totality of the circumstances, failure to do so was not so gross or unduly prejudicial that it tainted the trial. Thus, Steichen has failed to show that his trial was so fundamentally unfair that he was deprived of due process.

### 2. Whether Steichen was denied his right to effective assistance of trial counsel because an alibi witness was not called to testify.

[¶22.] Steichen also argues that he was deprived of effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments. *See* US Const amend VI; US Const amend XIV. Specifically, Steichen contends that trial counsel erred by failing to call Marilyn Lubeck to testify and present Steichen's employment records with her trucking company as alibi evidence. The circuit court determined that trial counsel's assistance was not constitutionally deficient.

[¶23.] We have recently explained our standard of review as follows:

> Whether a defendant has received ineffective assistance of counsel is essentially a mixed question of law and fact. In the absence of a clearly erroneous determination by the circuit court, we must defer to its findings on such primary facts regarding what defense counsel did or did not do in preparation for trial and in his presentation of the defense at trial. This Court, however, may substitute its own judgment for that of the

circuit court as to whether defense counsel's actions or inactions constituted ineffective assistance of counsel.

Baldridge v. Weber, 2008 SD 14, ¶21, 746 NW2d 12, 17 (citations omitted).

[¶24.]     The Sixth Amendment has long been held to mandate not simply the right to counsel but the right to *effective* counsel. Strickland v. Washington, 466 US 668, 686, 104 SCt 2052, 2063, 80 LEd2d 674 (1984) (citing McMann v. Richardson, 397 US 759, 771, n14, 90 SCt 1441, 1449, n14, 25 LEd2d 763 (1970)) (emphasis added). Writing for the Court, Justice O'Connor explained, "[t]he Sixth Amendment recognizes the right to the assistance of counsel because it envisions counsel[ ] playing a role that is critical to the ability of the adversarial system to produce just results." *Id.* at 685, 104 SCt at 2063. We consider the two-part inquiry from *Strickland v. Washington.* 466 US at 687, 104 SCt at 2064. The defendant must prove "(1) ineffective assistance of counsel and (2) prejudice." *Baldridge*, 2008 SD 14, ¶31, 746 NW2d at 20 (citing *Strickland*, 466 US at 687, 104 SCt at 2064).

[¶25.]     To establish the first prong of ineffective performance, the defendant must rebut the strong presumption that the counsel's performance was competent. Boyles v. Weber, 2004 SD 31, ¶27, 677 NW2d 531, 540 (citations omitted). The appropriate standard for judging a lawyer's performance under the first prong is that of "reasonably competent assistance." *Strickland*, 466 US at 687, 104 SCt at 2064 (citation omitted). "'There is a strong presumption that counsel's performance falls within the wide range of professional assistance and the reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all circumstances.'" Denoyer v. Weber, 2005 SD 43, ¶19, 694 NW2d 848, 855 (quoting Brakeall v. Weber, 2003 SD 90, ¶15, 668 NW2d

79, 84 (quoting *Bradley,* 1999 SD 68, ¶19, 595 NW2d at 621)). The second prong of the *Strickland* test requires a defendant to show that counsel's deficient performance caused actual prejudice to the defendant. *Strickland,* 466 US at 693, 104 SCt at 2067.

[¶26.] Here, Steichen did not demonstrate that trial counsel's performance was deficient under the *Strickland* test. K.C. testified that Steichen molested her three to four times a week. Steichen argues that Lubeck's testimony would have refuted K.C.'s allegations because the records would have shown he was away from home eighty to ninety percent of the time as a truck driver and could not have molested K.C. three to four times a week. Lubeck's testimony at the habeas hearing did not necessarily support Steichen's claim that he was away from home one to two weeks at a time. Lubeck testified that some trips could have been as long as two weeks, however, other trips might only have been overnight. Since the employment records were no longer available at the time of the habeas hearing, Steichen could not verify the exact dates of his trucking trips. However, Steichen's trial counsel testified that he did review the records when they were produced at trial. He determined that the dates of Steichen's trucking trips did not coincide with the dates of the alleged abuse. Consequently, the records would not have provided an alibi.

[¶27.] Trial counsel further testified that he made a strategic decision not to utilize Lubeck or the records because he felt that the evidence would hurt the case. Lubeck's testimony and the trucking company records could have impeached Steichen's testimony that he was gone eighty to ninety percent of the time. Trial

counsel testified that "the records did not relate to the period of time that we were trying to overcome in front of the jury."

[¶28.]	Consequently, Steichen has not shown that failure to use Lubeck's testimony or the trucking records rendered counsel's performance deficient. Counsel's explanation was reasonable under the circumstances and based on sound trial strategy. Further, Steichen did not demonstrate prejudice because neither Lubeck's testimony nor the records provided an actual alibi for the dates of the alleged sexual abuse. Consequently, Steichen was not deprived of his Sixth Amendment guarantee of effective assistance of counsel.

### 3. Whether Steichen's sentences were unconstitutionally cruel and unusual.

[¶29.]	Steichen argues that his sentences are the equivalent of life in prison without parole and are grossly disproportionate to the crimes committed. He claims that the sentences constitute cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution and Article VI, section 23 of the South Dakota Constitution. *See* US Const amend VIII; US Const amend XIV; SD Const art VI §23. He asserts that a life sentence ruins the goal of rehabilitation. Steichen intended to introduce statistics regarding sentences imposed for similar offenses as part of the intra- and inter- jurisdictional analysis. Steichen argues on appeal that the habeas court's refusal to permit the introduction of statistics for similar offenses was error.

[¶30.]	"'It is well-settled that we employ very limited principles in our constitutional review of sentences. These principles include giving 'substantial deference[ ] to the legislature's broad authority to determine the types and limits of

punishment' and the notion that 'the Eighth Amendment does not mandate adoption of any one penological theory.'" State v. Dubois, 2008 SD 15, ¶41, 746 NW2d 197, 210 (quoting State v. Garber, 2004 SD 2, ¶28, 674 NW2d 320, 327 (additional citations omitted)). For this reason, we seldom disturb sentences that are within the statutory maximum. *Id.* To review the proportionality of a sentence we consider the intra- and inter- jurisdictional analysis:

> "[W]e first determine whether the sentence appears grossly disproportionate. To accomplish this, we consider the conduct involved, and any relevant past conduct, with utmost deference to the Legislature and the sentencing court." *If the sentence does not appear grossly disproportionate, no further review is necessary.* If the sentence does appear grossly disproportionate, an intra- and inter-jurisdictional analysis shall be conducted. We also consider "the gravity of the offense and the harshness of the penalty;" and other relevant factors, such as the effect this type of offense has on society.

*Id.* (quoting State v. Williams, 2006 SD 11, ¶12, 710 NW2d 427, 432 (citations omitted)) (emphasis added).

[¶31.] We first consider whether Steichen's sentence appears grossly disproportionate. In Steichen's case, the circuit court considered Steichen's conduct and past conduct during sentencing. Steichen was convicted of multiple instances of sexual abuse against minors. He threatened his victims with death if they told anyone of the incidents of sexual abuse. Further, the habeas court determined that:

> [Steichen's] presentence investigation and psychosexual evaluation did not show he was amenable to treatment or rehabilitation. In fact, it showed the contrary. It showed that the Petitioner lacked remorse for his actions and failed to accept responsibility. The jury verdict showed that this was not an isolated "first offense" since he was convicted of sexual offenses against each of the victims on multiple counts.

Steichen's sentences were all within the statutory maximums. Thus, giving "utmost deference to the Legislature and sentencing court" and based on Steichen's conduct and history, we find that Steichen's sentences were not grossly disproportionate to his crimes. *See Dubois*, 2008 SD 15, ¶41, 746 NW2d at 210 (citations omitted). For this reason, we do not reach the intra- and inter-jurisdictional analysis.

[¶32.]       We affirm on all issues.

[¶33.]       GILBERTSON, Chief Justice, and KONENKAMP and ZINTER, Justices, concur.

[¶34.]       SABERS, Retired Justice, concurs specially.


SABERS, Retired Justice (concurring specially).

[¶35.]       Steichen has failed to show a valid constitutional violation of due process in regard to the other act evidence admitted in his trial. Furthermore, the United States Supreme Court has not explicitly addressed whether other act testimony violates a defendant's constitutional rights. *Estelle*, 502 US at 75 n5, 112 SCt at 484 n5, 116 LEd2d 385. However, a defendant should be tried only for the acts for which he is currently charged, and not for his other acts because it prejudices the trial. Therefore, I continue to stand on my dissent in Steichen's direct appeal of this case. *See Steichen*, 1998 SD 126, ¶¶43-49, 588 NW2d at 878-79 (Sabers, J., dissenting).

[¶36.]       In this habeas action, Steichen has failed to prove ineffective assistance of counsel. The record indicates that Steichen's trial counsel adequately represented him and properly argued against admittance of the other act evidence.

#24844

Under these facts, the trial court's admission of this evidence does not provide grounds for reversal on a habeas claim.  For these reasons, I concur specially.